IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLINTON MORRIS REDDICK,

    Petitioner,

vs.

T. FELKER, Warden, et al.,

    Respondents.

No. CIV S-07-1148 JAM CHS P

<u>FINDINGS AND RECOMMENDATIONS</u>

## I. INTRODUCTION AND BACKGROUND

Petitioner Clinton Reddick is a state prisoner proceeding pro se with an amended petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254. Petitioner stands convicted of various offenses in the Sacramento County Superior Court, case 02F03113. On direct appeal in case C045131, the California Court of Appeal, Third District, summarized the facts of his commitment offenses as follows:

> On April 9, 2002, at 1:00 p.m., defendant robbed Fashion Town, a Sacramento business owned and operated by Heasung Woo. During the robbery, defendant ordered Woo and his wife down onto the ground at gunpoint. At some point, Jerold Cassidy, a taxi driver, entered the store. At the time, defendant had the gun pointed at Woo.
>
> Cassidy had been dispatched to the location to pick up a passenger. He pulled up to Fashion Town, parked his car, approached the

1

>   store, "threw the door open," and said, "taxi." Inside the store, Cassidy saw defendant "holding down [Woo] and his wife on the floor with a gun at their head[s]." Defendant turned and said something to the effect of "hold it right there." The door then swung closed. Cassidy quickly walked away.
>
>   Defendant was later located at his co-defendant's apartment. A loaded handgun was recovered inside a hallway closet.

(Lodged document 2 at 2.) Petitioner was convicted of two counts of second degree robbery, possession of a firearm by a convicted felon, and assault with a firearm (as to victim Cassidy). He was sentenced to serve 11 years in state prison, consecutive to another term he was then serving. The California Court of Appeal, Third Appellate District, affirmed judgment, and the California Supreme Court denied review. Petitioner subsequently filed four separate state petitions seeking a writ of habeas corpus, which were likewise denied.

## II. PETITIONER'S CLAIMS

Petitioner sets forth the following nine grounds for relief: (1) trial counsel rendered ineffective assistance when he refused to call petitioner's former attorney to testify at trial; (2) there was insufficient evidence to sustain the convictions because victim Woo testified that the handgun recovered from the co-defendant's home was not the gun used during the robbery; (3) the trial court erred when it denied petitioner's motion brought pursuant to *People v. Marsden* (2 Cal. 3rd 118 (1970)) to relieve counsel and have new counsel appointed; (4) trial counsel rendered ineffective assistance in various other ways, including by failing to sufficiently meet with petitioner before trial; (5) the prosecutor engaged in misconduct by attempting to improperly influence an eyewitness's testimony regarding the number of doors that were on the getaway car; (6) the prosecutor engaged in misconduct by knowingly presenting as false evidence the gun from co-defendant's home, which victim Woo failed to identify as the gun used during the robbery;[1] (7) the prosecutor engaged in misconduct when she misstated to the judge a

---

[1] The gun was marked for identification but was not offered or admitted into evidence.

summary of the facts of petitioner's prior felony conviction during a hearing outside the presence of the jury; (8) appellate counsel rendered ineffective assistance of counsel in failing to raise the foregoing seven grounds on direct appeal; and (9) the evidence was insufficient to sustain the conviction for assault with a firearm with respect to victim Cassidy because the gunman never pointed the gun at Cassidy.

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

### IV.  DISCUSSION

A.   Procedurally Defaulted Grounds

Petitioner's grounds 1, 3, 5-8, and most of ground 4[2] were presented to the

---

[2] Petitioner presented his fourth ground to the California Supreme Court in case S159988, except that he did not allege that counsel failed to meet with him prior to trial.

3

California Supreme Court in a petition for writ of habeas corpus in case S159988.  The California Supreme Court denied these claims in an unreasoned opinion with citations to *In re Robbins*, 18 Cal. 4th 770, 780 (1998) and *In re Clark*, 5 Cal. 4th 750 (1993).  (Lodged document 12.)  These citations indicate that the court dismissed the petition as untimely.  *See Thorson v. Palmer*, 479 F.3d 643, 644-45 (9th Cir. 2007) (concluding that the California Supreme Court's citation to *Robbins* was "a clear ruling that [the] petition was untimely"); *see also Park v. California*, 202 F.3d 1146, 1152 n.3 (9th Cir. 2000) (noting that *Clark* "dealt specifically with the bar of untimeliness").  Respondent asserts that these grounds are barred from review on the merits because the state court declined to review them due to their untimeliness, a state procedural bar.

As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is "adequate" for these purposes if it is "firmly established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)); *see also Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.")  The state rule must also be "independent" in that it is not "interwoven with the federal law."  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, a claim may be still reviewed by the federal court if a petitioner demonstrates: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

Respondent's answer adequately pleads California's untimeliness rule as an independent and adequate state procedural bar to grounds 1, 3, 5-8, and ground 4, except for the

4

allegation in ground 4 that petitioner's counsel failed to meet with him prior to trial.  Although respondent retains the ultimate burden of proving the adequacy of the state procedural rule, the burden shifts at this point to petitioner, who must assert, at a minimum, specific factual allegations as to the adequacy of the state procedure.  *Bennett*, 322 F.3d at 588-85.  Petitioner has failed to do so, and thus has failed to meet his burden of placing the procedural default defense at issue.  *See Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).

Nor has petitioner demonstrated cause for his procedural default in state court. *See Coleman*, 501 U.S. at 748.  Satisfying the "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his effort to comply with California's untimeliness rule.  *McCleskey v. Zant*, 499 U.S. 467, 493 (1991).  When a petitioner fails to establish cause to excuse a procedural default, a court need not address the issue of prejudice. *Smith v. Murray*, 447 U.S. 527, 533 (1986).  In this case, petitioner has not attempted to explain why grounds 1, 3, 5-8, and most of ground 4 were untimely filed in state court.  Moreover, because his entire claims of ineffective assistance of trial counsel and appellate counsel were either procedurally defaulted or remain unexhausted[3], neither attorney's alleged deficient performance can constitute cause for the default.  *See Cockett*, 333 F.3d at 943; *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice would result if his claims are not reviewed.  The United States Supreme Court has described this narrow class of cases as those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime."  *See McCleskey*, 499 U.S. at 494.  This does not appear to be one of those extraordinary instances; accordingly, this court is precluded from reviewing the merits of petitioner's grounds for relief that were denied for untimeliness by the California Supreme Court in case S159988.

---

[3] As set forth in subsection B, *infra*, petitioner's allegation that trial counsel failed to meet with him prior to trial is unexhausted.

5

B.     Ground Four- Ineffective Assistance of Trial Counsel

As set forth *supra* in subsection A, the portion of petitioner's fourth ground alleging that counsel appointed for trial failed to sufficiently meet with him prior to trial to discuss his defense is not barred by a procedural default in state court. Respondent asserts, and the record indicates, that petitioner failed to exhaust this particular portion of his fourth ground for relief. Nevertheless, in the interest of judicial economy, the merits of the issue may be reached here. 28 U.S.C. §2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

A showing of ineffective assistance of counsel has two components. First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

A thorough search reveals no Supreme Court or Ninth Circuit precedent regarding a constitutional standard for the number of meetings a defense attorney must have or the amount of time that must be spent with the client prior to trial. Nevertheless, even assuming that petitioner could show that trial counsel's performance was deficient in this regard, he has failed to set forth any facts that show what he and counsel would have discussed, how his

6

1  defense could have benefitted, or how the outcome of the trial would have been different.
2  Without these necessary factual allegations, the required element of prejudice cannot be found.
3  *See Strickland*, 466 U.S. at 693-94.  Petitioner is not entitled to habeas corpus relief for
4  ineffective assistance of counsel based on his allegation that counsel failed to sufficiently meet
5  with him prior to trial.

        C.     Grounds Two and Nine- Sufficiency of the Evidence

In his second ground for relief, petitioner contends that the evidence was insufficient to support his convictions because it was not proven that he was the person who robbed Fashion Town.[4]  For his ninth and final ground, petitioner contends that the evidence was insufficient to support the conviction of assault with a firearm with respect to victim Cassidy, because there was no testimony that the gunman pointed the gun at Cassidy.

On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of

---

[4] Respondent asserts that petitioner's second ground is procedurally barred because it was presented to the California Supreme Court in case S146300 and denied with a citation to *In re Lindley*, 29 Cal. 2d 709 (1947).  In *Lindley*, the California Supreme Court held that "[u]pon habeas corpus... the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue for consideration."  *Lindley*, 29 Cal. 2d at 723.  Indeed, the Ninth Circuit has held the *Lindley* bar is both an independent and adequate state ground. *Carter v. Giurbino*, 385 F.3d 1194, 1197-98 (9th Cir. 1994).  In its unreasoned decision citing *Lindley*, however, the California Supreme Court also cited *In re Swain*, 34 Cal.2d 300, 304 (1949) (finding unexplained delay) and *People v. Duvall*, 9 Cal.4th 464, 474 (1995) (denying petition for failure to include documentary evidence). (Lodged document 10.)

     Because it is not clear from the California Supreme Court's order whether it relied solely on *Lindley* to deny petitioner's second ground, the determination whether that ground is procedurally defaulted depends on whether each of the three cited cases provides an independent and adequate basis under state law for the decision. *See Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000); *Bean*, 96 F.3d at 1131 (state procedural default no bar to federal review where state court's order did not specify which rule was being applied to which claims); *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996) ("[A] procedural default based on an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review").  Accordingly, both petitioner's ground two and nine will be reviewed on the merits. *See Lambrix*, 520 U.S. at 522-25 (explaining that when a habeas petition presents both a question of procedural default and a merits issue, the procedural bar question should ordinarily be considered first; however, where the procedural issue presents complicated issues of state law and the merits question is easily resolvable against the petitioner, judicial economy counsels giving the merits question priority).

fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). As stated by the United States Court of Appeals for the First Circuit, the focus under *Jackson* is not the correctness, but rather, the reasonableness of the state judgement. *See Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001). The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (*quoting Jackson*, 443 U.S. at 318).

Petitioner contends that the evidence did not prove that he was the person who robbed Fashion Town. Respondent asserts that there was ample evidence implicating petitioner.

Two employees at a neighboring tire store testified that they saw a man with a gun come out of Fashion Town and drive away in an old green Chevy Nova. (RT at 74-76; 84-86.) One of them described the gunman as wearing a dark, bulky, and heavy dark jacket. (RT at 81.) A third employee of the tire store positively identified a green Chevy Nova as the car he had seen leaving the area on the date in question. (RT at 228-29; 234.) That green Chevy Nova belonged to the mother of petitioner's co-defendant Daniel Bruins. (RT at 166.) Petitioner had been staying in an apartment with co-defendant Bruins on and off for a couple of weeks prior to the robbery. (RT at 165.) The robbery occurred at approximately 1:00 or 1:15 p.m. on April 9, 2002. (RT at 26-27, 61.) Between 1:30 and 2:00 p.m. on that date, the owner of Bruins's apartment complex saw petitioner drive the green Chevy Nova into a garage at the apartment complex. (RT at 140-46.)

When the police stopped Bruins, who was on foot, near Fashion Town at approximately 1:30 p.m., he was carrying petitioner's wallet. (RT at 94-95; 97-98.) Bruins also had a blue walkie talkie from Radio Shack, which was turned on. (RT at 101-102.)

About an hour and a half after the robbery, police entered Bruins's apartment and encountered petitioner there. (RT at 99-101.) There was a dark, puffy, down-type jacket on the living room sofa with a blue walkie talkie from Radio Shack which was turned to the on position.

1  (RT at 102.) Next to the jacket was a dark colored head scarf. (RT at 103-104.) Victim Woo
2  had testified that the gunman wore black from head to toe and carried a gun wrapped in
3  something black. (RT at 27-28.) Police also recovered from the Chevy Nova a pair of black
4  nylons with the legs cut off. (RT at 189.) This was consistent with the description of a mask or
5  hood worn by the gunman, which two of the tire store employees testified that the gunman had
6  removed from his head after he got into the Chevy Nova to drive away. (RT at 76, 85-86.)
7  Police also found a loaded gun in the apartment closet (RT at 122-23), although victim Woo
8  testified that it was not the gun used during the robbery (RT at 38).

9   When the police first came to the apartment, they announced themselves loudly
10 and knocked on the door for about two to three minutes. (RT at 118-119.) Petitioner failed to
11 respond or make his presence in the apartment known until the police had made their way
12 upstairs and encountered him standing in a doorway. (RT at 118-119.) Respondent argues that
13 the jury could reasonably infer that this showed petitioner's consciousness of guilt. In addition,
14 Marilyn Hill, the mother of petitioner's son, testified that petitioner asked her to lie and say he
15 was with her during the time of the robbery. (RT at 252-53.)

16   Petitioner appears to contend that the evidence was legally insufficient simply
17 because victim Woo testified that the gun from Bruins's closet was not the gun used during the
18 robbery. Respondent correctly asserts that the jury could have reasonably concluded that Woo,
19 while truthful and accurate elsewhere in his testimony, was mistaken in his testimony about the
20 gun. *See United States v. Heredia*, 483 f.3d 913, 923 at n.14 (9th Cir. 2007). Moreover, Woo's
21 failure to identify the gun from Bruins' closet as the weapon used does not negate the other
22 circumstantial evidence of petitioner's involvement. In short, there was sufficient evidence on
23 which rational jurors could have reasonably concluded beyond a reasonable doubt that petitioner
24 was the gunman who robbed Fashion Town.

25   Petitioner also contends that the evidence did not prove that he assaulted victim
26 Cassidy with a deadly weapon because there was no evidence that the gunman ever aimed the

gun at Cassidy. An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. Under California law, assault is a general intent crime. *People v. Chance*, 44 Cal.4th 1164, 1169 (2008). In order to be convicted of assault with a deadly weapon under California law, "it is not necessary to actually point the gun directly at the other person to commit the crime." *People v. Raviart*, 93 Cal. App. 4th 258, 263 (2001) (upholding conviction of assault against one police officer even though the gun was pointed toward another officer). Instead, "when the party draws the weapon, although he does not directly point it at the other, but holds it in such a position as enables him to use it before the other party could defend himself, at the same time declaring his determination to use it against the other, the jury are fully warranted in finding that such was his intention." *People v. McMakin*, 8 Cal. 547, 549 (1857). Furthermore, an assault may occur even when the infliction of injury is prevented by environmental conditions or by steps taken by victims to protect themselves. *Chance*, 44 Cal.4th at 1173. "There need not be even a direct attempt at violence; but any indirect preparation towards it... would be sufficient." *Id*. at 1172.

On direct appeal, the California Court of Appeal determined that the evidence was sufficient to show that petitioner committed an assault with a firearm on Cassidy:

> In this case, Cassidy entered the building and saw defendant "holding down [Woo] and his wife on the floor with a gun at their head[s]." Defendant turned toward Cassidy and ordered him to remain where he was standing, saying "something to the effect of hold it right there." Reasonable jurors could construe defendant's demand that Cassidy "hold it right there" as "an implied threat" to turn the gun away from the Woos and onto Cassidy if he did not do as he was told. Because no evident obstruction stood between the gun and Cassidy, reasonable jurors could deduce that defendant could turn the gun toward Cassidy instantly.
>
> We thus reject defendant's argument that the gun was "not in a position to be used instantly against Cassidy because it was always pointed at the Woos, who were in a different direction from Cassidy." Because he had previously drawn the gun, and he turned toward Cassidy, defendant was in a position where he could have used the gun against Cassidy had Cassidy not fled out the door. Defendant did not have to perform the further act of actually pointing the gun directly at Cassidy to be guilty of assaulting

1 | Cassidy.

2 | (Lodged document 2 at 6-7 (internal brackets, citations, and quotations omitted).)

3 | Given the evidence in this case, the jury could have reasonably concluded that
4 | petitioner made an unlawful attempt, coupled with a present ability, to commit a violent injury on
5 | Cassidy when he turned toward Cassidy while holding a gun and stated something to the effect of
6 | "hold it right there." The fact that Cassidy allowed the door to swing shut and was able to flee
7 | before petitioner could point the gun at him does not mean that an assault did not occur. *See*
8 | *Chance*, 44 Cal.4th at 1173. Accordingly, there was sufficient evidence to convict petitioner of
9 | assault with a firearm as to victim Cassidy.

## V. CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 28, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE